**Nos. 23-1647 (L),
23-1648, 23-1649, 23-1650, 23-1651, 23-1652, 23-1781**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

---

OI EUROPEAN GROUP B.V.,

*Plaintiff-Appellee*,

v.

BOLIVARIAN REPUBLIC OF VENEZUELA,

*Defendant-Appellant*,

PETRÓLEOS DE VENEZUELA, S.A.,

*Intervenor-Appellant.*

---

Appeals From The United States District Court For The District Of Delaware
Nos. 1:19-mc-290-LPS, 1:20-mc-257-LPS, 1:21-mc-46-LPS, 1:21-mc-481-LPS,
1:22-mc-156-LPS, 1:22-mc-453-LPS, Judge Leonard P. Stark

---

## BRIEF FOR CRYSTALLEX INTERNATIONAL CORP.
## AS *AMICUS CURIAE* SUPPORTING NEITHER PARTY

---

Robert L. Weigel
Rahim Moloo
Jason W. Myatt
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, N.Y. 10166
(212) 351-4000

Miguel A. Estrada
   *Counsel of Record*
Lucas C. Townsend
Matthew S. Rozen
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500

*Counsel for Crystallex International Corp.*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Third Circuit LAR 26.1.1, Crystallex International Corp. hereby discloses that it has no parent corporations, and no publicly held company owns 10% or more of its outstanding membership units.  No publicly owned company not a party to this appeal has a financial interest in the outcome of this litigation.

## TABLE OF CONTENTS

INTEREST OF *AMICUS CURIAE*.............................................................1

ARGUMENT ....................................................................................4

    I.    The *Crystallex* Decisions Foreclose Venezuela's State-Law
        Argument...........................................................................7

    II.   Federal Law—Not Delaware Law—Governs PDVSA's
        Relationship To Venezuela ...............................................15

        A.    *Bancec* Held That Federal Law Applies...................15

        B.    *Cassirer* Has No Bearing On This Case ..................20

CONCLUSION .................................................................................24

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Arriba Ltd. v. Petroleos Mexicanos,*
962 F.2d 528 (5th Cir. 1992) ...............................................................16

*Bank of N.Y. v. Yugoimport,*
745 F.3d 599 (2d Cir. 2014) ................................................................16

*Bolivarian Republic of Venezuela v. Crystallex Int'l Corp.,*
140 S. Ct. 2762 (2020) ....................................................................1, 13

*Cassirer v. Thyssen-Bornemisza Collection Found.,*
153 F. Supp. 3d 1148 (C.D. Cal. 2015) ...............................................21

*Cassirer v. Thyssen-Bornemisza Collection Found.,*
142 S. Ct. 1502 (2022) ........................................................20, 21, 22

*Crestwood Cap. Corp. v. Andes Indus. Inc.,*
2019 WL 6726293 (D. Ariz. Dec. 11, 2019) .......................................19

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela,*
333 F. Supp. 3d 380 (D. Del. 2018)...............................7, 8, 9, 10, 18

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela,*
932 F.3d 126 (3d Cir. 2019) .......................................1, 2, 3, 5, 6, 7, 10,
11, 12, 15, 18, 24

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela,*
2021 WL 129803 (D. Del. Jan. 14, 2021) ...............................3, 13, 14

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela,*
24 F.4th 242 (3d Cir. 2022) ...................................................3, 14, 15

*Delaware v. New York,*
507 U.S. 490 (1993)............................................................................19

*Doe v. Holy See,*
557 F.3d 1066 (9th Cir. 2009) (per curiam) .................................16, 17

*EM Ltd. v. Republic of Argentina*,
  473 F.3d 463 (2d Cir. 2007) ..............................................................19

*First Fid. Bank, N.A. v. Gov't of Antigua & Barbuda—Permanent Mission*,
  877 F.2d 189 (2d Cir. 1989) ..............................................................17

*First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*,
  462 U.S. 611 (1983)............................................... 1, 2, 4, 5, 6, 7, 8, 9, 10, 11, 12
                                                              13, 15, 16, 17, 19, 20, 21, 22

*Foremost-McKesson, Inc. v. Islamic Republic of Iran*,
  905 F.2d 438 (D.C. Cir. 1990)...........................................................16

*IFC Interconsult, AG v. Safeguard Int'l Partners, LLC*,
  438 F.3d 298 (3d Cir. 2006) .........................................................19, 20

*Janvey v. Libyan Inv. Auth.*,
  840 F.3d 248 (5th Cir. 2016) (per curiam) .......................................16

*Joyce v. Maersk Line Ltd*,
  876 F.3d 502 (3d Cir. 2017) (en banc) ...............................................6

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
  313 F.3d 70 (2d Cir. 2002) ................................................................19

*LNC Inv., Inc. v. Democratic Republic of Congo*,
  69 F. Supp. 2d 607 (D. Del. 1999)....................................................19

*Meadows v. Dominican Republic*,
  817 F.2d 517 (9th Cir. 1987) ............................................................20

*NLRB v. Deena Artware, Inc.*,
  361 U.S. 398 (1960)...........................................................................16

*Peacock v. Thomas*,
  516 U.S. 349 (1996)..............................................................................7

*Pescatore v. Pan Am. World Airways, Inc.*,
  97 F.3d 1 (2d Cir. 1996) ...................................................................19

*Peterson v. Islamic Republic of Iran*,
  627 F.3d 1117 (9th Cir. 2010) ..........................................................19

*Preston v. Thompson,*
   565 F. Supp. 294 (N.D. Ill. 1983) ...................................................... 19

*Republic of Argentina v. NML Cap., Ltd.,*
   573 U.S. 134 (2014) .......................................................................... 18

*Rubin v. Islamic Republic of Iran,*
   138 S. Ct. 816 (2018) ................................................................ 12, 18

*Schreiber v. Kellogg,*
   50 F.3d 264 (3d Cir. 1995) .............................................................. 19

*Walker Int'l Holdings, Ltd. v. Republic of Congo,*
   415 F.3d 413 (5th Cir. 2005) ........................................................... 19

*In re Wash. Mut. Inc.,*
   741 F. App'x 88 (3d Cir. 2018) ...................................................... 23

*Weinstein v. Islamic Republic of Iran,*
   831 F.3d 470 (D.C. Cir. 2016) ........................................................ 18

**STATUTES**

28 U.S.C. § 1291 .................................................................................. 11

28 U.S.C. § 1606 .................................................................................. 20

28 U.S.C. § 1610(c) ............................................................................... 7

28 U.S.C. § 1610(g)(1) ........................................................................ 12

**RULES**

Fed. R. Civ. P. 69 ....................................................................... 7, 18, 19

Fed. R. Civ. P. 69(a) ................................................................ 17, 18, 20

Fed. R. Civ. P. 69(a)(1) ...................................................................... 18

**OTHER AUTHORITIES**

3d Cir. I.O.P. 9.1 ................................................................................... 6

## INTEREST OF *AMICUS CURIAE*[1]

These appeals arise from actions by creditors of Venezuela that seek to capitalize on Crystallex International Corp.'s ("Crystallex") success in enforcing its own judgment against Venezuela.  In 2018, Crystallex became the first (and so far only) of Venezuela's many creditors to successfully attach Venezuela's shares of PDV Holding, Inc. ("PDVH"), the holding company that owns CITGO Petroleum Corp. ("CITGO").  Crystallex did this by establishing that Venezuela's state-owned oil company, Petróleos de Venezuela, S.A. ("PDVSA")—which nominally held the shares—is Venezuela's alter ego under the governing federal standard set forth in *First National City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611 (1983) ("*Bancec*").  Applying that standard, this Court affirmed Crystallex's attachment of the PDVH shares.  *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126, 134 (3d Cir. 2019), *cert. denied*, 140 S. Ct. 2762 (2020).  The creditors in these appeals seek to attach the same assets on the same theory.

Crystallex submits this *amicus* brief because it is evident that Venezuela and PDVSA seek to use these appeals to relitigate an issue they pressed and lost in 2019.  The 2019 *Crystallex* appeal unequivocally established that federal law—not

---

[1] No counsel for a party authored this brief in whole or in part, and no counsel or party contributed money intended to fund its preparation or submission.  No person other than *amicus* and its counsel contributed money intended to fund the preparation or submission of this brief.  All parties consented to the filing of this brief.

Delaware law—sets the standard for determining whether PDVSA is an alter ego of Venezuela.  Although Crystallex takes no position on the proper application of that federal standard to the facts of record in these appeals, the panel should not revisit legal issues that the Court considered and decided in Crystallex's case.

Ever since this Court affirmed Crystallex's attachment and the Supreme Court denied review in 2020, Venezuela and its instrumentalities—PDVSA, PDVH, and CITGO—have been seeking to relitigate the alter-ego issues this Court decided. They first attempted to do so in Crystallex's case through Venezuela's Rule 60(b) motion for relief from the judgment, ECF No. 184, and its instrumentalities' motion to quash the writ, ECF No. 179.[2]  Although Venezuela had previously opposed Crystallex's alter-ego allegations in the district court and in this Court by invoking the federal alter-ego standard set forth in *Bancec*, the motion to quash argued that Crystallex was also required to make a separate, additional showing under Delaware's distinct alter-ego standard.  ECF No. 179, at 7-14.  Crystallex opposed that argument as barred by collateral estoppel and this Court's mandate in *Crystallex*, and also as incorrect on the merits.  ECF No. 199, at 21-27.  The district court agreed, denying both motions and rejecting the invocation of the Delaware alter-ego

---

[2] Unless otherwise indicated, citations to "ECF No. __" refer to entries on the district court's docket in *Crystallex International Corp. v. Bolivarian Republic of Venezuela*, No. 1:17-mc-151-LPS (D. Del.) (Stark, J., sitting by designation).

standard as barred by collateral estoppel and this Court's decision in *Crystallex*, and also untimely. *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 2021 WL 129803, at *8-15 (D. Del. Jan. 14, 2021).[3]

Venezuela has now raised the same Delaware-law argument again in opposing new attachments in the cases now on appeal. But the Court considered and rejected that argument in Crystallex's case, and the Supreme Court denied review. That issue therefore cannot be revisited, and Venezuela cannot collaterally challenge the district court's January 14, 2021 order, which this Court has held is a nonappealable interlocutory order. Even if the Delaware-law argument could be revisited here, Venezuela's position is wrong for reasons that Crystallex explains below.

Crystallex also submits this brief to underscore the importance of keeping the sale process moving forward. More than a decade after Venezuela's 2011 theft of Crystallex's mining interests, Crystallex is still owed roughly $1 billion by Venezuela on a fully affirmed federal judgment. Through hard effort, the district court is making progress toward a sale. Last October, the district court entered a Sale Procedures Order that outlines the sale process and contemplates the possibility that other creditors, potentially including parties to these appeals, may be allowed to

---

[3] PDVSA, PDVH, and CITGO attempted to appeal from that decision, but this Court dismissed the appeal for lack of appellate jurisdiction. *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 24 F.4th 242, 249 (3d Cir. 2022).

participate as holders of "Additional Judgments" junior to Crystallex's priority. More recently, the United States announced that the Treasury Department's Office of Foreign Assets Control ("OFAC") would not take action against any person who participates in the sale process.  OFAC also stated that it intends to implement a favorable licensing policy for the successful bidder.  Crystallex and two branches of the federal government have thus invested substantial resources in getting this far. It is vitally important that the process keeps moving forward.

Accordingly, Crystallex submits this *amicus* brief to assist the Court in focusing on the issues that are properly presented in these appeals, and to correct significant errors and misrepresentations in the briefs filed by the Republic and PDVSA as to both the governing legal standard and the procedural history of Crystallex's case.  Crystallex takes no position on the Court's appellate jurisdiction over these appeals or the application of the federal legal standard to the facts of record.

## ARGUMENT

In *First National City Bank v. Banco Para El Comercio Exterior de Cuba* ("*Bancec*"), the Supreme Court, applying "principles … common to both international law and federal common law," held that a foreign state instrumentality may be treated as an alter ego of the state on either of two independently sufficient grounds:  (1) if the instrumentality is "extensively controlled" by the state; or (2) if

treating the entity as separate from the state would work "'fraud or injustice.'"  462 U.S. 611, 622 n.11, 623, 627-29 (1983).  In *Crystallex International Corp. v. Bolivarian Republic of Venezuela*, this Court held that this standard is "disjunctive," meaning that a "judgment creditor of a foreign sovereign may look to the sovereign's instrumentality for satisfaction when it is 'so extensively controlled by its owner that a relationship of principal and agent is created,'" even without "satisfy[ing] an element of fraud."  932 F.3d 126, 132, 140, 145 (3d Cir. 2019).  The Court then held that Crystallex had "clear[ed] that bar easily":  Venezuela exerted control over PDVSA "so extensive[ly]" that "equity requires that we ignore the formal separateness of the two entities," regardless of any showing of fraud.  *Id.* at 146-52.

Venezuela now seeks to relitigate this issue by invoking Delaware law.  In separate briefs filed by Venezuela and PDVSA, Venezuela claims that *Crystallex* only addressed the alter-ego standard applicable to "jurisdiction" under the Foreign Sovereign Immunities Act ("FSIA") and "never decided what source of law governs whether an attachment may issue as to a non-immune party."  Venezuela Br. 55-56.  According to Venezuela, the question of attachment requires a separate, additional showing that PDVSA's shares "can be seized to satisfy judgments against the Republic under Delaware law," PDVSA Br. 48-55, and Delaware law—unlike the federal common-law standard applied in *Bancec*—requires proof that a "corporate structure operates as a vehicle for fraud such that the corporate veil may be pierced,"

Venezuela Br. 46-55.

In making these arguments, Venezuela presents both an inaccurate account of the *Crystallex* litigation and an incorrect description of governing law. The dispute in *Crystallex* was not limited to jurisdiction. Venezuela both challenged the district court's subject-matter jurisdiction and opposed attachment on the merits, relying on Delaware law to support a fraud requirement for alter-ego status as to both issues. The district court and this Court, in turn, each addressed both jurisdiction and the merits, rejecting Venezuela's invocation of Delaware law and its proposed fraud requirement. Only after Venezuela lost in this Court and the Supreme Court denied review did Venezuela begin advancing the fictive narrative that it had only challenged jurisdiction all along.

Venezuela's Delaware-law arguments are thus barred by controlling precedent. Venezuela cannot use these appeals to relitigate issues pressed and decided in the *Crystallex* litigation, and of course "'the holding of a panel in a precedential opinion is binding on subsequent panels.'" *E.g.*, *Joyce v. Maersk Line Ltd*, 876 F.3d 502, 508 (3d Cir. 2017) (en banc) (quoting 3d Cir. I.O.P. 9.1). But even writing on a clean slate, Venezuela's arguments would fail because *Bancec* makes clear that its alter-ego standard governs the relationship between a foreign state and its instrumentalities for all purposes, and Venezuela cannot muster any authority to the contrary. Accordingly, this panel need not and should not reach the

issue in light of *Crystallex*'s binding precedent, but if it does, it should reject Venezuela's misguided Delaware-law arguments and make clear that *Bancec* alone governs the alter-ego allegations involving a foreign state.

## I.    The *Crystallex* Decisions Foreclose Venezuela's State-Law Argument

The essential premise behind Venezuela's attempt to relitigate *Crystallex*'s holding on the legal standard applicable to alter-ego determinations is the incorrect assertion that *Crystallex* only addressed the alter-ego standard applicable to "jurisdiction under the FSIA," and "never decided what source of law governs whether an attachment may issue as to a non-immune party." Venezuela Br. 55-56. That assertion is revisionist history. Venezuela's arguments in *Crystallex* were never limited to jurisdiction—it also disputed the merits of Crystallex's attachment, and this Court addressed that issue as well.

**A.**    Crystallex placed its right to attach the PDVH shares into controversy when it moved the district court for an order under 28 U.S.C. § 1610(c) authorizing a writ attaching the PDVH shares. Crystallex relied on Delaware attachment procedure under Federal Rule of Civil Procedure 69, *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 333 F. Supp. 3d 380, 387-88 (D. Del. 2018), which "permits judgment creditors to use any execution method consistent with the practice and procedure of the State in which the district court sits," *Peacock v. Thomas*, 516 U.S. 349, 359 n.7 (1996). Crystallex also relied on federal common-law standards to

establish that the shares were Venezuela's property. *Crystallex*, 333 F. Supp. 3d at 396-98. Because Venezuela holds the PDVH shares in PDVSA's name, Crystallex explained that the court "first need[ed] to … fin[d] that PDVSA is an alter ego of Venezuela." ECF No. 3-1, at 26-27. Crystallex thus invoked *Bancec*'s holding that courts may disregard a state-owned instrumentality's corporate form if either: (1) the state "so extensively control[s]" the instrumentality "that a relationship of principal and agent is created"; or (2) recognizing the instrumentality as a separate entity "'would work fraud or injustice.'" 462 U.S. at 629.

Venezuela dispatched PDVSA to oppose the attachment, and PDVSA met the issue. It not only moved to dismiss for lack of subject-matter "jurisdiction under the FSIA," Venezuela Br. 55-56, but also opposed Crystallex's motion on the merits, filing a combined brief "in support of its cross-motion to dismiss" and "in opposi-tion" to Crystallex's motion. ECF No. 26 (cover page, capitalization omitted). PDVSA argued that Crystallex's motion should be, alternatively, "dismissed" or "denied." *Id*. at 1-2, 4.

In opposing issuance of the writ, PDVSA relied on "Delaware corporate law" to argue that "alter ego liability applies only … where the corporate form is abused to perpetrate a fraud." ECF No. 26, at 16-17 (citing Delaware-law cases). Though PDVSA conceded to the district court at oral argument that "federal common law"

governs the alter-ego inquiry, it claimed that "Delaware corporate law" "heavily in-fluenced" the federal standard, ECF No. 49, at 67:10-20, and Crystallex could not show "the sort of fraud" Delaware law required, ECF No. 26, at 24.  According to PDVSA, two consequences followed: (1) on the merits, "Crystallex fail[ed] to es-tablish its alter ego claim"; and (2) the "alter ego allegations … likewise fail[ed]" as a "basis for the Court's subject matter jurisdiction." *Id*. at 2.  PDVSA's brief was unequivocal that these two consequences were distinct.  Venezuela has never ex-plained what else the first consequence could have meant, if not that Crystallex's motion failed on the merits.  In the same brief, PDVSA argued at length that *Bancec* "establishes that a foreign state and its agencies and instrumentalities are presump-tively treated as separate entities *for purposes of liability*," and that Crystallex had not "demonstrated" facts "necessary to establish an alter ego relationship between PDVSA and the Republic." *Id.* at 3 (emphasis added); *id*. at 13-37.  PDVSA pressed these merits arguments (*id.* at 13-37) *in addition to* its jurisdictional challenges (*id.* at 9-13).

The district court rejected these arguments in August 2018.  Expressly disa-greeing with PDVSA's Delaware-law arguments, the court held that "federal law, not state law," governs the alter-ego inquiry.  *Crystallex*, 333 F. Supp. 3d at 396 n.13.  The court found PDVSA's "state-law alter ego standards," including "Dela-

ware state law," to be "unhelpful" and "unpersuasive" because "the pertinent relationship is that between Venezuela and PDVSA, neither of which is a Delaware corporation." *Id*. at 396 n.13, 405. Instead, applying *Bancec*, the court held that "alter ego may be shown by *either* extensive control '*or* fraud or injustice.'" *Id.* at 397 (emphases added; alteration omitted). Because Crystallex sufficiently showed "extensive control," *id.* at 399, it was not required to show fraud. In its bottom-line conclusions, addressing "[s]ubject matter jurisdiction [and] the merits," alike, *id.* at 394 n.10, the court held that: (1) "PDVSA is the alter ego of Venezuela," *id.* at 406; (2) "PDVSA's shares in PDVH" are "property of Venezuela," *id.* at 415; and (3) the shares are therefore "subject to attachment and execution" to "satisfy Venezuela's debt to Crystallex," ECF No. 95, at 1. The court thus both denied PDVSA's motion to dismiss and granted Crystallex's motion to authorize the attachment. *Crystallex*, 333 F. Supp. 3d at 426. Two weeks later, the court ordered the clerk to issue the writ of attachment. ECF No. 95, at 2.

**B.** PDVSA filed separate appeals from both of these orders. ECF Nos. 80, 117. On appeal, PDVSA again conceded that "the *Bancec* test is the same in the jurisdictional context as in the liability context," and it challenged the attachment "on both fronts." PDVSA Reply Br., No. 18-2797, Dkt. 3113154696, at 11 (3d Cir. Feb. 6, 2019); *see also* Tr. of Apr. 15, 2019 Oral Argument, No. 18-2797, Dkt. 3113225709, at 27:12-13, 35:18-19 (3d Cir. filed Apr. 30, 2019) (PDVSA counsel

arguing that the Court could not properly make an alter-ego finding "either for juris-dictional purposes or for substantive liability purposes," because *Bancec* contem-plates an alter-ego finding that is "both jurisdictional as well as liability shifting"); *id.* at 42:3-4 ("[T]hey meld into one question": can "PDVSA be the alter ego of Venezuela in this case?").

This Court rejected both challenges and "affirm[ed]" the "order granting the writ of attachment," reviewing immunity under the collateral order doctrine and re-viewing the granting of the writ of attachment as "a final judgment under 28 U.S.C. § 1291" that left the district court with "'nothing left to do but execute.'" *Crystallex*, 932 F.3d at 133, 136. The panel thus made clear that it was reviewing both jurisdic-tion and the merits, consistent with PDVSA's arguments. The panel held that "[u]nder federal common law" (*Bancec*), a "judgment creditor of a foreign sovereign may look to the sovereign's instrumentality for satisfaction when it is 'so extensively controlled by its owner that a relationship of principal and agent is created,'" even without "satisfy[ing] an element of fraud." *Id*. at 132, 145. The panel agreed that Crystallex had made the necessary showing of extensive control, noting that "if the relationship between Venezuela and PDVSA cannot satisfy the Supreme Court's ex-tensive-control requirement, we know nothing that can." *Id*. at 152.

Even the Court's discussion of subject-matter jurisdiction, moreover, was built on its views of "substantive liability." *Crystallex*, 932 F.3d at 138. Citing

*Rubin v. Islamic Republic of Iran*—a case addressing the substantive standard under 28 U.S.C. § 1610(g)(1) for attaching a foreign state instrumentality's property on a judgment against the state, 138 S. Ct. 816, 823 (2018)—the Court held that "*Bancec* can … be used to reach the assets of a foreign sovereign's extensively controlled instrumentality through post-judgment attachment proceedings." *Crystallex*, 932 F.3d at 139. The Court thus concluded that "so long as PDVSA is Venezuela's alter ego under *Bancec*, the District Court had the power to issue a [post-judgment] writ of attachment." *Id.* In other words, *Bancec* "determine[s]" both "'whether the [instrumentality's] assets'" are "'subject to execution'" and "whether the district court had [subject-matter] jurisdiction." *Id.* Because Crystallex satisfied that standard, the Court concluded that Crystallex "may look to [PDVSA] for satisfaction." *Id.* at 132.

PDVSA and Venezuela (which had intervened on appeal) sought rehearing of the panel's decision that "'extensive control' ... is sufficient to overcome the presumption of separateness between a foreign state and its corporate instrumentality under *Bancec both* for purposes of attributing liability *and* abrogating sovereign immunity under the Foreign Sovereign Immunities Act." PDVSA Pet. for Reh'g, No. 18-2797, Dkt. 3113359542, at 1 (Sept. 26, 2019) (emphases added); *see also* Venezuela Pet. for Reh'g, No. 18-2797, Dkt. 3113359593, at 7-8 (Sept. 26, 2019) (ob-

jecting that "the panel found alter-ego liability," which involves a "'substantive theory'" of liability).  This Court denied rehearing without any noted dissent.  Order Denying Pets. for Reh'g, No. 18-2797, Dkt. 3113412157 (Nov. 21, 2019).  The Supreme Court subsequently denied Venezuela's request for "review of the substantial jurisdictional *and liability* questions presented in this case."  Pet. for Writ of Cert., at 7, *Bolivarian Republic of Venezuela v. Crystallex Int'l Corp.*, No. 19-1049 (U.S. Feb. 19, 2020), 2020 WL 1043433 (emphasis added); *see* 140 S. Ct. 2762.

**C.**    Following the Supreme Court's refusal to hear the case, Venezuela sought relief under Rule 60(b), and its instrumentalities—PDVSA, PDVH, and CITGO—also moved to quash the attachment, contending, *inter alia*, that Delaware substantive law governs whether PDVSA is an alter ego of Venezuela.  The district court denied these motions, correctly recognizing that its prior ruling and this Court's judgment affirming it fully disposed of Venezuela's attempt through its instrumentalities to invoke a fraud requirement for alter-ego status under Delaware law.  The district court explained that "the validity of the writ ha[d] been actually, necessarily, and finally resolved" by this Court, which had held that "if the *Bancec* standard is met … then PDVSA's shares of PDVH are validly attached and can be executed on." *Crystallex*, 2021 WL 129803, at *10.  The district court thus concluded that it was required to reject Venezuela's Delaware-law argument because—

even putting aside collateral estoppel—it was "'bound by the Third Circuit's published, precedential decision,' which held that the writ is valid." *Id.* at *13.

**D.** This Court further confirmed that it already rejected Venezuela's arguments when PDVSA, PDVH, and CITGO sought to appeal the denial of their motion to quash, and this Court unanimously dismissed that appeal for lack of jurisdiction. *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 24 F.4th 242, 246 (3d Cir. 2022). In the background section of its opinion, the Court noted the basic contours of Venezuela's state-law theory: "In an argument that raised the District Court's sense of déjà vu, [Venezuela's instrumentalities] sought to litigate the alter ego status of PDVSA once again," even though the district court determined that it and this Court had "already decided the alter ego issue" in the prior decisions. *Id.* at 247-48. But the Court concluded that it "lack[ed] authority to entertain these arguments" because the denial of the motion to quash was non-final and hence unappealable. *Id.* at 249-56.

Remarkably, Venezuela misrepresents this decision as having "recognized" purportedly relevant principles of Delaware law. Venezuela Br. 48. But Venezuela misleadingly quotes out of context a passage from the opinion's *background* section that was explicitly framed as a description of what Venezuela "argued" below—not as a statement of the Court's own views. *Crystallex*, 24 F.4th at 247-48. The best that can be said for Venezuela's claim is that the Court did not expressly reject it on

the merits because it dismissed Venezuela's appeal.  *See* Venezuela Br. 56 n.8 (Venezuela conceding that this Court did not "reac[h] the attachability issue" in that opinion).  But in describing the district court's sense of "déjà vu," *Crystallex*, 24 F.4th at 247-48, this Court made clear as well that Venezuela's effort to rewrite history had not gone unnoticed.

Crystallex recounts this history because Venezuela's arguments in these appeals in support of the supposed applicability of Delaware law improperly rehash arguments that this Court previously rejected.  It is important for the panel to understand what issues were litigated and decided in *Crystallex* so that, in resolving these appeals, the panel does not inadvertently create inconsistency.  To ensure consistency, the Court should reject Venezuela's latest attempt to recast the arguments it made and lost in *Crystallex* and mischaracterize *Crystallex*'s binding authority.

## II.    Federal Law—Not Delaware Law—Governs PDVSA's Relationship To Venezuela

Venezuela is also wrong on the merits of the governing legal standard, even if that question had not already been resolved by the prior *Crystallex* decisions.

### A.    *Bancec* Held That Federal Law Applies

The Supreme Court held in *Bancec* that the corporate relationship between a foreign state and its instrumentalities is governed by "principles … common to both international law and federal common law."  462 U.S. at 622 n.11, 623.  The "pre-

sumption" that courts treat foreign states and their instrumentalities as "independent"—the basis for Venezuela's claim that PDVSA is *not* Venezuela—comes from federal law, including the FSIA's "legislative history." *Id.* at 627-28. *Bancec* likewise looked to federal law—*e.g.*, *NLRB v. Deena Artware, Inc.*, 361 U.S. 398, 399 (1960) (applying the National Labor Relations Act)—to define the grounds for overcoming that presumption. The Court expressly rejected the argument that "the law of the forum State" should control, given "'the importance of developing a uniform body of law,'" so that "matters bearing on the Nation's foreign relations" are "'not … left to divergent and perhaps parochial state interpretations.'" 462 U.S. at 622 n.11.

Courts in multiple circuits have therefore recognized that under *Bancec*, "international law and federal common law … determine when instrumentalities should not be treated as distinct from the sovereign." *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 448 (D.C. Cir. 1990). A claim to "overcom[e] the presumption that [a foreign state] instrumentality … is separate from the foreign state" is analyzed "with reference to federal law, not foreign law or state law." *Janvey v. Libyan Inv. Auth.*, 840 F.3d 248, 264 (5th Cir. 2016) (per curiam). Courts decide whether this presumption "can be overcome" under "federal common law." *Bank of N.Y. v. Yugoimport*, 745 F.3d 599, 613 (2d Cir. 2014); *see also*, *e.g.*, *Doe v.*

16

*Holy See*, 557 F.3d 1066, 1077 (9th Cir. 2009) (per curiam) (applying "principles 'common to both international law and federal common law'").

By contrast, Venezuela fails to cite a single case from *any court* that has analyzed the corporate relationship between a foreign state and its instrumentality under state law for *any purpose*.  That failure undercuts Venezuela's attempt to distinguish the standard applicable "for purposes of establishing jurisdiction" from the standard applicable to the merits.  Venezuela Br. 53.

*Bancec* itself applied alter-ego principles to "substantive liability," not jurisdiction.  *Arriba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528, 533 (5th Cir. 1992).  The question was whether Citibank could bring a counterclaim against Cuba's instrumentality for Cuba's unlawful expropriation of Citibank's assets.  *Bancec*, 462 U.S. at 632-33.  While courts have *also* applied *Bancec* to "jurisdictional issues," *Arriba*, 962 F.2d at 533, "juridical separateness" under *Bancec* "is a question of substantive law, not of subject matter jurisdiction," *First Fid. Bank, N.A. v. Gov't of Antigua & Barbuda—Permanent Mission*, 877 F.2d 189, 194 (2d Cir. 1989).  Thus, even assuming *arguendo* that the district court's analysis had been limited to jurisdiction (it was not), there would be no reason to apply a different standard to the merits and force Crystallex to meet two separate alter-ego tests at different stages.

Venezuela claims that a different standard applies to "the attachment issue" in "proceedings to execute on a judgment" under Federal Rule of Civil Procedure

69(a).  Venezuela Br. 16.  But this Court has already rejected Venezuela's attempt "to restrain the application of *Bancec* in post-judgment proceedings."  *Crystallex*, 932 F.3d at 139; *see supra*, at 10-13.  Rather than addressing the substantive standard for finding an alter-ego relationship, Rule 69(a) merely states that the forum state's law governs the "procedure" in proceedings in aid of execution.  Fed. R. Civ. P. 69(a)(1); *see also Weinstein v. Islamic Republic of Iran*, 831 F.3d 470, 480 n.18 (D.C. Cir. 2016), *abrogated on other grounds by Rubin*, 138 S. Ct. 816.  State law thus governs procedural questions in enforcement proceedings, such as which writ should be used, *see Crystallex*, 333 F. Supp. 3d at 387, the "types of property a judgment creditor may attach," *id.* at 388, the "contexts" in which alter-ego allegations may be raised, *id.* at 394, and the sale process, *id.* at 425.

Venezuela's cases, for example, contemplate the application of state law to determine the scope of post-judgment discovery, *Republic of Argentina v. NML Cap., Ltd.*, 573 U.S. 134 (2014); whether creditors could reach a specific type of

asset;[4] what methods could be used to enforce a judgment;[5] and whether the parties

should bear their own fees in garnishment proceedings, *Walker Int'l Holdings, Ltd.*

*v. Republic of Congo*, 415 F.3d 413, 416 (5th Cir. 2005).[6]

By contrast, Rule 69 does not address "substantive" questions, which are governed by ordinary "choice of law" rules, "not … Rule 69." *Crestwood Cap. Corp.*

*v. Andes Indus. Inc.*, 2019 WL 6726293, at *1 (D. Ariz. Dec. 11, 2019).   While

sometimes those rules may point to the forum state, they can also point elsewhere.

*IFC Interconsult, AG v. Safeguard International Partners, LLC*, 438 F.3d 298 (3d

Cir. 2006), for example, applied Delaware law to a Rule 69 garnishment proceeding

in federal court in Pennsylvania.   Pennsylvania law (the forum state) determined

whether the "garnishee" could "raise the judgment debtor's defenses as against the

---

[4] *See Schreiber v. Kellogg*, 50 F.3d 264, 267, 272 n.16 (3d Cir. 1995); *EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 474 & n.10 (2d Cir. 2007); *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 313 F.3d 70, 83 (2d Cir. 2002).  Even further afield are Venezuela's citations (PDVSA Br. 49) to *Delaware v. New York*, 507 U.S. 490, 502 (1993), and *Pescatore v. Pan American World Airways, Inc.*, 97 F.3d 1, 12 (2d Cir. 1996), neither of which even applied Rule 69 (and both of which addressed only procedural questions in any event).

[5] *See Peterson v. Islamic Republic of Iran*, 627 F.3d 1117, 1130 (9th Cir. 2010); *LNC Inv., Inc. v. Democratic Republic of Congo*, 69 F. Supp. 2d 607, 611 (D. Del. 1999); *Preston v. Thompson*, 565 F. Supp. 294, 307 (N.D. Ill. 1983).

[6] Venezuela also cites veil-piercing cases involving purely private and/or domestic entities, Venezuela Br. 47-48, but these cases are plainly inapposite to cases involving foreign states, for which the distinct "principles governing" the analysis instead rest on "international law and federal common law," *Bancec*, 462 U.S. at 623.

judgment creditor," but Delaware law governed the garnishee's "liability" to the debtor. *Id.* at 318-20. Like the liability questions in *IFC*, the "identity … of a foreign state" under *Bancec* "is a matter of substantive law," "'as opposed to procedural law,'" *Meadows v. Dominican Republic*, 817 F.2d 517, 524 (9th Cir. 1987), so Rule 69(a) does not import state law to control that inquiry. There is thus no colorable basis to apply a different alter-ego test than the federal test Crystallex has already satisfied.

### B.   *Cassirer* Has No Bearing On This Case

Venezuela also claims that the Supreme Court's decision in *Cassirer v. Thyssen-Bornemisza Collection Foundation*, 142 S. Ct. 1502 (2022), "made clear" that state law applies to the alter-ego analysis, PDVSA Br. 5, but that argument fails at every step. At the threshold, *Cassirer* does not support the application of Delaware law to determine whether PDVSA is an alter ego of Venezuela such that Venezuela in fact owns the attached shares. *Cassirer* does not even address the choice-of-law principles applicable to such issues—the question instead was what choice of law rule governs "in an FSIA case raising non-federal claims." 142 S. Ct. at 1507. But whether a foreign state and its own instrumentality are alter egos is not a "non-federal claim." Instead, as the Supreme Court held nearly forty years ago in *Bancec*, the corporate relationship between a foreign state and its instrumentalities is governed by "principles … common to both international law and federal common

law." 462 U.S. at 622 n.11, 623. *Bancec* expressly rejected the argument that Venezuela presses here (Venezuela Br. 46-52; PDVSA Br. 49-50) that application of state law is required by 28 U.S.C. § 1606, which provides a foreign state "shall be liable in the same manner and to the same extent as a private individual under like circumstances," *id.* That statute, *Bancec* explained, requires the application of state-law "rule[s] of liability" to foreign states, but *not* state-law "rule[s] governing the attribution of liability *among* entities of a foreign state." 462 U.S. at 622 n.11. Questions about relationships "among entities of a foreign state"—including whether to recognize the separate corporate status of foreign state-owned instrumentalities—are instead governed by "'a uniform body of law'" supplied by federal common law. *Id.* (emphasis omitted).

*Cassirer* does not purport to overrule *Bancec*—instead, the Court expressly cited *Bancec* without questioning its holdings. Citing footnote 11 of *Bancec*—the footnote that rejected the application of state law to alter-ego questions—the Supreme Court held in *Cassirer* that foreign states are "subject to the same *rules of liability* as a private party," 142 S. Ct. at 1508 (emphasis added), the same rules that *Bancec* contrasted with rules governing relationships "among entities of a foreign state," 462 U.S. at 622 n.11 (emphasis omitted). Applying that principle, the Supreme Court held that, in FSIA cases, courts should use "whatever choice-of-law rule the court would use if the defendant were not a foreign-state actor, but instead

a private party," to "determine the applicable substantive law" governing liability. *Cassirer*, 142 S. Ct. at 1506. That holding meant that California's choice-of-law rule would determine which jurisdiction's laws (not necessarily California's) would govern the determination of the rightful owner of the painting in dispute. *Id.* at 1509. The Supreme Court did not address questions of the relationship between foreign state entities because those questions were not presented—the sole respondent was a Spanish state-owned art museum. The Kingdom of Spain, though originally a party to the case, had been dismissed more than a decade ago by joint stipulation of the parties. *See Cassirer v. Thyssen-Bornemisza Collection Found.*, 153 F. Supp. 3d 1148, 1152 n.6 (C.D. Cal. 2015). The Supreme Court thus had no occasion to address, much less reconsider, *Bancec*'s holding that federal common law governs relationships among foreign state entities, including alter-ego questions, nor did the Court purport to reconsider that holding. In short, *Cassirer* has no bearing on any issue in this case.

Even if *Cassirer*'s choice-of-law holding somehow applied to the alter-ego questions in this case, it would not support the application of Delaware substantive law here. At best, it would support the application of Delaware "*choice-of-law rule*[*s*]" to determine which substantive law would apply. *Cassirer*, 142 S. Ct. at 1506 (emphasis added). But even if PDVSA and Venezuela were private parties, Delaware would not apply its own law to the legal status of a foreign corporation.

*See In re Wash. Mut. Inc.*, 741 F. App'x 88, 92 n.5 (3d Cir. 2018) (applying "Washington law to determine the relationship between ... Washington corporations" under "Delaware choice of law rules").  And more to the point, the choice of law in this case involving a foreign sovereign and its instrumentality is clear:  Federal law governs, because "matters bearing on the Nation's foreign relations 'should not be left to divergent and perhaps parochial state interpretations.'"  *Bancec*, 462 U.S. at 622 n.11.  Delaware therefore *could not* lawfully—consistent with the Supremacy Clause of the United States Constitution— apply its own substantive law to reach a different answer as to the legal status of a foreign state instrumentality than the answer supplied by federal common law.

## CONCLUSION

Crystallex respectfully requests that the Court reject Venezuela's attempt to evade the controlling precedent of *Crystallex*, which holds that federal law governs PDVSA's relationship to Venezuela. Crystallex takes no position on the district court's application of federal law to the facts of record.

May 23, 2023                                    Respectfully submitted,

                                                */s/ Miguel A. Estrada*
Robert L. Weigel                                Miguel A. Estrada
Rahim Moloo                                        *Counsel of Record*
Jason W. Myatt                                  Lucas C. Townsend
GIBSON, DUNN & CRUTCHER LLP                     Matthew S. Rozen
200 Park Avenue                                 GIBSON, DUNN & CRUTCHER LLP
New York, N.Y. 10166                            1050 Connecticut Avenue, N.W.
(212) 351-4000                                  Washington, D.C. 20036
                                                (202) 955-8500

        *Counsel for Crystallex International Corp.*

## CERTIFICATION OF BAR MEMBERSHIP

I hereby certify that at least one attorney whose name appears on this brief is a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

May 23, 2023

/s/ *Miguel A. Estrada*
Miguel A. Estrada
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
(202) 955-8500

# CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7)(B)(i) because it contains 5,115 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman font.

3.     This brief complies with this Court's Rule 31.1(c) because the document has been scanned with version 14 of Symantec Endpoint Protection and is free of viruses.

May 23, 2023

*/s/ Miguel A. Estrada*
Miguel A. Estrada
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
(202) 955-8500

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of May, 2023, I caused the foregoing brief to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the Court's CM/ECF system.  I further certify that service was accomplished on all parties via the Court's CM/ECF system.

May 23, 2023

/s/ Miguel A. Estrada
Miguel A. Estrada
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
(202) 955-8500

## CERTIFICATE OF IDENTICAL TEXT

Pursuant to Third Circuit L.A.R. 31.1(c), I hereby certify that the text of the electronic brief filed on May 23, 2023 is identical to the text of the hard copies of the brief that are being submitted to this Court.

May 23, 2023

/s/ Miguel A. Estrada
Miguel A. Estrada
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
(202) 955-8500